UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SANDRA PIERCE, )<br>a/k/a SANDRA DUNCAN )<br>Defendant. ) | Cause No. 1:26-cr-020-JPH-KMB |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

1. Defendant SANDRA PIERCE was a resident of Indianapolis and McCordsville, Indiana, which are in the Southern District of Indiana.

2. PIERCE was an employee of the United States Postal Service, and she was the sole owner of a business called Sandy's On The Run.

3. PIERCE held herself out as someone who could help individuals and businesses obtain COVID-19 relief program loans.

### EIDL Loan Program

4. The United States Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small

1

businesses. The mission of the SBA is to maintain and strengthen the nation's economy by helping small businesses and assisting communities recover economically after disasters.

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 2020. The CARES Act was designed to provide emergency financial assistance to the millions of Americans who were hurt economically from the COVID-19 pandemic.

6. One source of relief provided by the CARES Act was the expansion of the Small Business Administration Economic Injury Disaster Loan ("EIDL") program. This program provided loan assistance for businesses with 500 or fewer employees and other eligible entities. The EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue because of the COVID-19 pandemic.

7. To gain access to funds through the EIDL program, small businesses applied through the SBA via an online portal and application. The EIDL application process collected information concerning the business and the business owner such as the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Generally, the greater the business's gross revenues for the prior year, the more money the business qualified for in an EIDL.

8. Applicants were required to electronically certify that the information provided was accurate. Applicants were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

9. EIDL funds were issued to the small business applicants directly from the United States Treasury. EIDL loan proceeds were permitted to be used to pay an array of working

capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.

10. Disbursements of SBA Disaster proceeds, including COVID-19 related EIDLs, were transmitted by the Financial Management System (FMS) to the Treasury. The server for FMS is in Virginia.

## The Paycheck Protection Program

11. Another source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

12. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the applicant was required to state, among other things: (a) its average monthly payroll expenses and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

13. PPP loan proceeds were required to be used by the business for certain permissible expenses-payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA under certain conditions.

3

14. To gain access to funds through the PPP, small businesses applied through financial institutions participating in the PPP and received the loans directly from those financial institutions. Participating financial institutions required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the business's operating expenses, how the PPP loan would be used, and the applicant's criminal history, which information was material to lenders' approval, terms, and funding of loans. The tax documents that are submitted as supporting documentation to the loan are signed "under penalty of perjury."

15. PPP loan applications were electronically submitted by a borrower were received through SBA servers located in Virginia or Oregon.

## Purpose of the Scheme and Artifice to Defraud

16. The purpose of the scheme was for PIERCE to enrich herself by obtaining PPP and EIDL loans to which she was not lawfully entitled. As part of the scheme, PIERCE caused to be submitted loan applications under her name that contained false information. When these loans were approved, PIERCE received funds to which she was not lawfully entitled.

17. In addition, PIERCE also prepared fraudulent PPP loan applications and EIDL applications on behalf of others. As part of the conspiracy and scheme, PIERCE knowingly caused to be submitted loan application under the name of others that contained false information. It was further the purpose of the scheme that PIERCE would direct others to send PIERCE a portion of the fraudulently obtained loan proceeds.

## The Scheme and Artifice to Defraud

18. Between on or about June 19, 2020, and on or about May 14, 2021, PIERCE submitted at least one false and fraudulent application for an EIDL and at least two false and fraudulent applications for PPP loans under her name.

19. In these applications, PIERCE made materially false statements, including those about her business's gross sales, revenue, and payroll.

20. Based on these fraudulent applications made in her name, PIERCE received an EIDL and two PPP loans for a total of more than $48,000. Once PIERCE received the funds from the EIDL and PPP loans, PIERCE used the funds to pay her personal living expenses. PIERCE did not use the funds on purported business expenses.

21. As further part of the Scheme, PIERCE also told others that she could obtain Covid-relief loans for them. PIERCE created and submitted fraudulent PPP loan applications and EIDL applications under other people's names. PIERCE frequently used the same information in the fraudulent returns she completed for others, including those for gross income, net profit, and cost of goods. PIERCE would receive a portion of the money obtained with the fraudulent application.

22. In total, PIERCE completed at least 22 fraudulent PPP loan applications or EIDL applications under the names of other people. Based on false representations made in these applications, loans worth more than $674,000 were provided. In exchange, PIERCE received more than $100,000 from individuals for whom she prepared the fraudulent loan applications.

## Counts 1-5
## Wire Fraud
## 18 U.S.C. § 1343

23. Paragraphs 1-22 are realleged as if set forth fully herein.

24. Beginning on a date unknown but at least as early as in or about June 2, 2020, and continuing until at least on or about February 2022, SANDRA PIERCE, Defendant herein, having devised and executed a scheme and artifice to defraud and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, as further described in Paragraphs 1 through 22 above, did for the purpose of executing such scheme described above and attempting to do so, .cause the wire communications identified below to be transmitted by means of wire communication in interstate commerce:

| Count | On or About Date | Name on Application | Interstate Wire Communication |
|---|---|---|---|
| 1 | February 5, 2021 | A.M. | PIERCE submitted a PPP loan application from Indiana which was routed through servers located outside of Indiana. |
| 2 | February 13, 2021 | SANDRA PIERCE | PIERCE submitted a PPP loan application from Indiana which was routed through servers located outside of Indiana. |
| 3 | February 23, 2021 | T.T. | PIERCE submitted a PPP loan application from Indiana which was routed through servers located outside of Indiana. |
| 4 | April 2, 2021 | K.S. | PIERCE submitted a PPP loan application from Indiana which was routed through servers located outside of Indiana. |
| 5 | May 14, 2021 | SANDRA PIERCE | PIERCE submitted a PPP loan application from Indiana which was routed through servers located outside of Indiana. |

Each of which is a violation of Title 18, United States Code, Section 1343.

## FORFEITURE

25. The allegations described above in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

26. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343, set forth in Counts 1-5 of this Indictment, the Defendant, SANDRA PIERCE, if so convicted, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

27. If any of the property described above, as a result of any act or omission of the defendants:

       a. cannot be located upon the exercise of due diligence;

       b. has been transferred or sold to, or deposited with, a third party;

       c. has been placed beyond the jurisdiction of the court;

       d. has been substantially diminished in value; or

       e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 18, United States Code, Section 981, as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL:

FOREPERSON

THOMAS E. WHEELER II
United States Attorney

By: _____
Adam Eakman
Assistant United States Attorney
::KMS